UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CARMEN MARTINEZ,

    Plaintiff,

    v.

HAMMOND CITY OF, et al.,

    Defendants.

Case No. 2:24-CV-189-GSL-AZ

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss [DE 22], as well Plaintiff's Motion for Leave to File a Second Amended Complaint [DE 33]. The Motion to Dismiss has been fully briefed, [DE 23–25], and oral argument was heard on May 22, 2025. [DE 26]. The Motion for Leave to File a Second Amended Complaint has also been fully briefed. [DE 34–36]. Both motions are now ripe for ruling. For the reasons set forth below, the Court **GRANTS** Defendants' Motion [DE 22] and **DENIES** Plaintiff's motion [DE 33].

## BACKGROUND

Plaintiff brought suit against the City of Hammond Police Department ("Police Department"), the City of Hammond, Hammond Police Chief William Short, Various Agencies, Various Corporations, Various John Does, and Various Jane Does—each of whom were sued in their official capacities. [DE 14, ¶¶ 9–12]. Plaintiff raises a number of federal and state claims against Defendants, including: (1) disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; (2) sex discrimination under both Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e–2 and –5, and 42 U.S.C. § 1981(a); (3) retaliation; (4) violations of Sections 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791 and 794; (5)

negligent infliction of emotional distress under Indiana law; (6) intentional infliction of emotional distress under Indiana law; and (7) violation of the First Amendment and 42 U.S.C. § 1983.[1]

*Factual Background*

Plaintiff, a Hispanic female, has served as a police officer for the City of Hammond Police Department ("Police Department") since 2004, achieving the rank of Sergeant. [DE 14, ⁋ 17]. Plaintiff alleges that during the course of her employment, she was subjected to a hostile work environment which included sexual harassment, race discrimination, and the failure to make appropriate accommodations for her diagnosed emotional trauma. [*Id.*, ⁋ 18].

In 2004, Plaintiff witnessed a "suicide by cop." [*Id.*, ⁋ 23]. Plaintiff alleges she complained to her employers about this emotional fear for five years following the incident but claims nothing was resolved and that she was treated differently because of her gender. [*Id.*, ⁋⁋ 23–24]. At another point, Plaintiff was called to the scene of a reported armed robbery where shots were fired at her and no back-up support was provided. [*Id.*, ⁋ 21]. Simultaneously, officers from the neighboring towns of Gary and Merrillville were murdered during the same shift as Plaintiff, leading Plaintiff to believe she "had effectively been left on an island to defend herself." [*Id.*, ⁋ 22]. Following these incidents, Plaintiff was officially diagnosed with PTSD in 2014. [*Id.*, ⁋ 19].

Plaintiff notified the Police Department about her PTSD diagnosis, but alleges she was criticized for not following proper protocol and that there was no response for assistance. [*Id.*, ⁋⁋ 20, 25]. Plaintiff further alleges she was told that, as a woman, she needed to "suck it up" if she

---

[1] In Plaintiff's prayer for relief section in the Amended Complaint, Plaintiff states that she seeks joint and several liability as to Counts I through IX. [DE 1 at 8; 14 at 8]. However, Plaintiff only raises seven counts in her complaint. Defendants pointed this out in both their initial and renewed motions to dismiss, and thus seek dismissal on these counts for insufficient pleading. [*See* DE 9 at 1 n.1; DE 23 at 1 n.1]. No further references to these additional counts appear in the parties' briefing, but to the extent that Plaintiff seeks to pursue claims under the unnamed Counts XIII and IX, those counts are dismissed for lack of proper notice and insufficient pleading. *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (providing that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give defendants fair notice of the claims against them and the grounds supporting the claims").

wanted to be a police officer. [*Id.*, ⁋ 20]. Plaintiff thereafter sought treatment on her own and discovered a program called "Ohio Assist," which she attended for five days. [*Id.*, ⁋ 26]. During this program, Plaintiff was evaluated and told she needed therapy. [*Id.*].

Upon returning from the program, she sought a therapist for her disability treatment but was ridiculed at the police department for making excuses to avoid her shift work at nights. [*Id.*, ⁋ 27]. Plaintiff's PTSD caused her to lose sleep and become overwhelmed. [*Id.*, ⁋ 28]. Because of the continuing issues stemming from her PTSD, in August 2022, Plaintiff was ordered to be evaluated for fitness for duty.[2] [*Id.*, ⁋ 29]. The evaluation resulted in Plaintiff being placed on administrative leave for ten days. [*Id.*]. Plaintiff alleges that during the administrative leave period, she was threatened with a write up of her job performance if she did not provide excused absences from her therapist. [*Id.*, ⁋ 30]. Once Plaintiff returned to duty, she was thereafter removed from traffic patrol—a position she had been working in for seven years—and transferred to road patrol. [*Id.*].

Throughout the end of 2022 and into 2023, Plaintiff sought assistance from the Police Department's Wellness Unit, in which confidential information discussed with the counselor was to be protected. [*Id.*, ⁋ 31]. Plaintiff alleges that her confidential information was subsequently shared with Jeff Long, the Assistant Chief of Police. [*Id.*].

Plaintiff further alleges that during the course of her employment, she was exposed to sexual harassment, including requests to perform sexual acts. [*Id.*, ⁋ 32]. Although Plaintiff rebuffed these suggestions, she claims she became aware of the presence of a significant level of sexual misconduct throughout the police department, including extramarital affairs, obscene

---

[2] A psychological fitness-for-duty exam is a medical exam an employer may require an employee to undergo to determine whether the employee can safely perform work-related functions. *See Tedrow v. Franklin Twp. Cmty. Sch. Corp.*, 674 F. Supp. 3d 494, 512 (S.D. Ind. 2023) (citing *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 904–05 (7th Cir. 2018)).

sexual gestures, and other such misconduct. [*Id.*]. Plaintiff alleges this misconduct created issues for herself as well as other officers. [*Id.*, ⁋ 33]. Plaintiff complained about the misconduct and expressed concern that serious morale issues had developed within the police department as a result. [*Id.*, ⁋ 34]. Because Plaintiff raised these concerns, she alleges she was retaliated against by her superiors and others within the Police Department. [*Id.*, ⁋ 35].

*Procedural Background*

On June 3, 2024, Plaintiff filed her initial complaint in this matter. [DE 1]. In response, Defendants filed their initial motion to dismiss. [DE 8]. After fully briefing the motion to dismiss, [*see* DE 9–11], the parties filed a joint motion requesting leave [DE 12] for Plaintiff to file an amended complaint which the Court granted. [DE 13]. Thereafter, Plaintiff filed the operative Amended Complaint [DE 14], and Defendants renewed their Motion to Dismiss. [DE 22]. Oral argument addressing Defendants' Motion to Dismiss was heard on May 22, 2025. [DE 32]. The Motion has been fully briefed and is now ripe for ruling. [*See* DE 23–25]. In addition, after hearing oral argument on Defendants' Motion to Dismiss, Plaintiff filed her Motion for Leave to File a Second Amended Complaint. [DE 33]. That motion has also been fully briefed and is also ripe for ruling. [*See* DE 35–36].

## <u>LEGAL STANDARD</u>

In response to a complaint, a party may file a motion to dismiss the action asserting that the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face rather than merely conceivable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This is to say that the plaintiff sufficiently pleads the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Under this plausibility standard, a court accepts the well-pleaded factual allegations stated in the complaint as true and views them in the light most favorable to the non-moving party. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019). However, legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). After a court excises legal conclusions and conclusory allegations from the pleading, it determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The Seventh Circuit has interpreted the *Twombly-Iqbal*, standard to require a plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). However, where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the claim must be dismissed. *Mattice v. Memorial Hosp. of South Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001) (alteration omitted).

## **DISCUSSION**

### I.    **Motion to Dismiss [DE 22]**

#### A.  **Count I: ADA Discrimination**

Beginning with Count I in the Amended Complaint, Plaintiff raises a claim for disability discrimination under the ADA. [DE 14, ¶¶ 37–40]. It is unclear which title of the ADA Plaintiff is attempting to raise her claim under; however, given the alleged facts in this case, it appears that her claim would fall under Title I. *See Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 852 (7th Cir. 2018)

(explaining that the "ADA is organized into three titles prohibiting discrimination across three major spheres of public life: employment (Title I); public services, programs, activities (Title II); and public accommodations (Title III)").

As a preliminary note, Defendants argue that Plaintiff has failed to state a viable claim for relief because she has not exhausted her administrative remedies. [DE 23 at 4]. Both Title VII and the ADA require that a plaintiff first file their charges administratively and receive a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) before bringing a federal suit. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (citing 42 U.S.C. § 12117). In addition, claims brought in a federal suit must fall within the scope of the charges filed with the EEOC as "an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (alteration omitted) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

When Plaintiff filed the Amended Complaint, she failed to attach the required administrative documents as required under 42 U.S.C. § 12117. Defendants argue that the failure to attach the administrative documents is equivalent to Plaintiff having failed to exhaust her administrative remedies. [DE 23 at 6]. Plaintiff's failure to attach the EEOC charge and right-to-sue letter, however, may not be as fatal as Defendants assert. First, while Plaintiff did not attach the administrative documents to the Amended Complaint, she did plead facts showing compliance with the administrative exhaustion requirements. [*See* DE 14, ¶¶ 13–14]. This pleading put Defendants on notice that Plaintiff sought to pursue either a Title VII or ADA claim, which is exactly what the pleading standard is designed to do. *See Nygren*, 658 F.3d at 797. Second, Plaintiff

6

attached the EEOC charge and the right-to-sue letter to her brief opposing Defendants' current Motion to Dismiss, further providing notice as to the general claims being sought. [DE 24-1; DE 24-2]. Finally, Plaintiff appears to have filed her suit within the statutory ninety-day window and alleged facts generally falling within the scope of claims raised in the EEOC charge, thereby satisfying the timeliness and scope requirements. *See DeTata v. Rollprint Packaging Prods. Inc.*, 632 F.3d 962, 967 (7th Cir. 2011) (citing 42 U.S.C. § 2000e–5(f)(1)); *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) ("[A] Title VII [or ADA] plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint."). Therefore, because Defendants' exhaustion argument is an inappropriate ground for dismissing Count I, the Court will turn to assess the sufficiency of Plaintiff's pleading.

"The ADA prohibits employers from discriminating against disabled employees because of their disability." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011) (citing 42 U.S.C. § 12112(a)). To establish a case of disability discrimination under Title I of the ADA, Plaintiff must show the following: (1) she was disabled; (2) she met or was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees without a disability were treated more favorably. *Id.* at 601. The ADA defines "disability" as one of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)). "The type of 'major life activities' that must be substantially limited to fall under the purview of the ADA include, but are not limited to: caring for oneself, learning, reading, concentrating, thinking, communicating, and working." *Id.* (citing § 12102(2)).

Here, Plaintiff has pled facts showing she has a diagnosis for PTSD due to work-related incidents, that she has had PTSD since at least 2014, and that her PTSD has caused her to lose sleep and have feelings of being overwhelmed. [DE 14, ¶¶ 19, 21–23, 28]. Thus, it appears that Plaintiff has sufficiently alleged a qualified disability under the ADA. *See Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020) (recognizing PTSD as a qualifying disability that substantially impacted major life activities where plaintiff had a history of PTSD symptoms such as insomnia, flashbacks, and loss of appetite); *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020) (noting that plaintiff was a qualified individual with a disability where numerous physical and mental limiting conditions, which included PTSD, could affect major life activities). Moreover, although somewhat skim, Plaintiff appears to provide enough notice that an adverse action took place. [DE 14, ¶¶ 29–30]. Specifically, Plaintiff notes that in August 2022 she was placed on administrative leave for ten days to be evaluated for fitness for duty—presumably because of her PTSD—and that she was not only threatened with a write-up of her job performance if she did not provide excused absences from her therapist, but that she was ultimately demoted from her position as a result of the evaluation. [*Id.*].

Beyond this, however, Plaintiff's claim fails under the *Twombly* standard as she does not provide any factual allegations showing that she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, or moreover, that she was treated disparately when compared to other similarly situated individuals. Not only does Plaintiff fail to factually plead the "who, what, when, where, and how" that is typically required to bump Plaintiff's claim from conceivable to plausible, *see DiLeo*, 901 F.2d at 627, but where Plaintiff does raise allegations in the Amended Complaint, they are merely conclusory legal assertions which the Court cannot accept as true. *See McCauley*, 671 F.3d at 616. For example, Plaintiff

alleges that Defendants (1) knew of her PTSD, (2) could have provided a reasonable accommodation but deliberately chose not to, (3) treated her with indifference because of her disability, and (4) treated her disparately in comparison to other similarly situated officers. [DE 14, ¶¶ 38–41]. However, Plaintiff does not identify who was treated differently, how she was treated better or worse than other officers, or what accommodations were available. As the Supreme Court has explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Because Plaintiff has only offered "an unadorned, the-defendant-unlawfully-harmed-me accusation" without also offering a plausible recitation of facts in support, *see id.*, Plaintiff has failed to state a claim upon which relief can be granted under Title I.

Count I is therefore dismissed.

### B.  Count II: Title VII Sex Discrimination

Moving to Count II, Plaintiff raises a sex discrimination claim under Title VII, specifically 42 U.S.C. §§ 2000e–2 and –5.[3]

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (quoting § 2000–2(a)(1)). To establish a claim of sex discrimination under Title VII, Plaintiff must demonstrate the following: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action;

---

[3] Plaintiff has indicated that, as to Count II, she intends to only proceed under Title VII. Therefore, the Court considers her claim under either § 1981(a) or § 1982(a) withdrawn. *See* [DE 24 at 15-16].

and (4) she was treated less favorably than a similarly situated male employees. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005).

Based on a review of the Amended Complaint, Count II similarly fails under the *Twombly* standard for insufficient pleading.[4] While Plaintiff has sufficiently pled that she is a member of a protected class—i.e., gender, [DE 14, ⁋ 43], Plaintiff has not pled any facts going toward the other elements of her sex discrimination claim. As to the second element, Plaintiff states that she "had all the necessary physical and mental capabilities to successfully perform her position" and was making serious efforts to perform her job. [*Id.*, ⁋⁋ 43–44]. She does not, however, explain what physical and mental capabilities she possessed in any detail, elaborate on how well she had been performing, or note how long she had been performing without issue.

For the third element, Plaintiff states that she is "now being deprived of income in the form of wages and other fringe benefits, including pension rights, for which [D]efendants are liable," [*id.*, ⁋ 49], but does not follow up by explaining what adverse action led to this deprivation, in what way she is being deprived of these benefits, or by what amount these benefits have been deprived. All Plaintiff states is that she was "systematically denied her position when her superiors suggested that she had violated department procedures." [*Id.*, ⁋ 44]. This, coupled with Plaintiff's other assertions that Defendants' conduct was based upon the fact that she is a female and that Defendants acted maliciously and with reckless indifference toward her rights, amount to nothing more than legal conclusions which the Court cannot accept. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, Plaintiff does not offer any further pleadings showing that she

---

[4] As with Count I, Defendants argue that Plaintiff's Title VII claim should be similarly dismissed for the failure to exhaust her administrative remedies. [DE 23 at 4]. However, as was explained in regard to Plaintiff's ADA claim, this is an insufficient ground for dismissal as Plaintiff appears to have properly complied with the administrative exhaustion requirements. *See supra* Section I.A. Moreover, Plaintiff has likewise alleged the same general facts in her EEOC charge going toward her sex discrimination claim, thereby satisfying the scope requirement. [DE 24-1; DE 24-2]. *See Conner*, 413 F.3d at 680; *Teal*, 559 F.3d at 691.

was treated less favorably when viewed next to "comparators"—i.e., those similarly situated employees outside of the protected class who are directly comparable to Plaintiff in all material respects. *Ontiveros v. Exxon Mobil Corp.*, 148 F.4th 521, 528 (7th Cir. 2025); *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Without this information, it is unclear how Plaintiff was discriminated against, or whether Plaintiff was discriminated against at all. Therefore, because Plaintiff has insufficiently pled her sex discrimination claim, Count II is dismissed.

### C.  Count III: Retaliation

Moving on to Count III, Plaintiff raises a claim for retaliation. [DE 14, ⁋ 52]. To succeed on a retaliation claim, the following must be established: "she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between her protected expression and the adverse action." *Fuller v. McDonough*, 84 F.4th 686, 690 (7th Cir. 2023) (quoting *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022)).

Defendants argue that Count III should be dismissed because Plaintiff has not identified the basis for the retaliation, nor has she identified the type of retaliation claim she seeks to bring. [DE 23 at 11–12]. In response, Plaintiff asserts that she "has alleged that her engagement in protected activities—specifically, her complaints about sexual harassment, misrepresentations of work performance, and safety procedures within the department—led to the Defendants' retaliatory actions[.]" [DE 24 at 21]. Plaintiff then goes on to say her "retaliation claim arises naturally from the facts already pleaded in support of her Title VII, ADA, First Amendment, and Rehabilitation Act claims, and it is unnecessary to isolate each statutory ground with precision." [*Id.*].

However, Plaintiff's argument highlights the very problem that Defendants allude to, especially where Plaintiff suggests that her retaliation claim could fall "naturally" under any of the other claims to which facts were alleged. For reference, various species of retaliation claims exist in the employment context. *See, e.g.*, *Dickerson*, 657 F.3d at 601 (ADA); *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (Title VII); *Fuller*, 84 F.4th at 690 (Rehabilitation Act); *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680–81 (7th Cir. 2015) (§ 1981); *Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 523 (7th Cir. 2017) (§ 1983); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (ADEA); *Rongere v. City of Rockford*, 99 F.4th 1095, 1104 (7th Cir. 2024) (EPA). While each species of retaliation is analyzed under the same framework, *see Rongere*, 99 F.4th at 1104, Plaintiff pointedly notes that several of these species *could be* invoked under the facts invocated in her Amended Complaint.

This is where Plaintiff's argument falters, though, as she must not only allege facts going toward a protected activity, but that protected activity "must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). Plaintiff has not done that here, as her factual allegations only state that she was discouraged from acting as a police officer, was treated retaliatorily, and was not accommodated when she made prior complaints about sexual harassment, misrepresentations of work performance, and departmental safety procedures. [DE 14, ⁋ 52; DE 24 at 21]. Plaintiff does not explain what "prior complaints" she is referring to, the number of times she raised them, or when they were raised. Plaintiff further neglects to point out the relevance of the work performance misrepresentations or the safety procedure complaints. If she can allege only general facts suggesting a protected activity but cannot identify which specific activity she hopes to bring a claim (or claims) on, it will be near impossible for the Court to properly assess the sufficiency of the claim, let alone for Defendants to be properly notified.

Even if Plaintiff had narrowed the direction of her retaliation claim and identified a specific protected activity, her claim would still fail because she has not identified an adverse action or alleged any facts going to the causal link requirement. Plaintiff only alleges that after she raised her complaints she "[was] retaliated against by her superiors and other members of the department" and that the retaliation "was done for the purpose of causing damage to Plaintiff through the loss of her position and damages to her property and persons." [DE 14, ₱ 35, 52]. These allegations do not provide even a sliver of notice as to how or when Plaintiff was retaliated against. *See Nygren*, 658 F.3d at 797.

Accordingly, Count III is dismissed. *See, e.g.*, *Hatcher v. Cheng*, 63 F. Supp. 3d 893, 899 (S.D. Ill. 2014) (dismissing retaliation claim under Title VII for failure to identify specific protected activity where failure led to defendant not having fair notice of the grounds on which claim was being brought).

### D. Count IV: Rehabilitation Act

Turning to Count IV, Plaintiff claims Defendants violated Sections 501 and 504 of the Rehabilitation Act. Section 501 "prohibits discrimination on the basis of disability in employment decisions by the Federal Government." *Bourke v. Collins*, 142 F.4th 918, 921 (7th Cir. 2025) (quoting *Lane v. Pena*, 518 U.S. 187, 193 (1996)). Defendants argue that Plaintiff has not alleged that any of the named Defendants are a part of the federal government, and thus Plaintiff's Section 501 claim should be dismissed for the failure to state a claim for which relief can be granted. [DE 23 at 6]. A review of the Amended Complaint does indeed show that no facts are alleged suggesting that any of the named Defendants belong to the federal government. Not only that, but Plaintiff

further fails to address Defendants' argument as it pertains to this part of Plaintiff's claim.[5] [*See* DE 24 at 10–12]. As the Seventh Circuit has explained, "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011). Thus, Defendants have presented a sufficient ground for dismissing Plaintiff's Rehabilitation Act claim under Section 501.

Looking next to Section 504, that statute provides the following: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019) (quoting 42 U.S.C. § 794(a)). To establish a violation of Section 504, Plaintiff must demonstrate the following: (1) she is a handicapped individual as defined by the Act; (2) she is "otherwise qualified" for participation in the program; (3) the program must receive federal financial assistance; and (4) she was denied the benefits of the program solely because of her handicap. *Id.*

Here, Defendants similarly argue that Plaintiff failed to allege facts showing that any of the named Defendants receive federal financial assistance. [DE 23 at 6]. In response, Plaintiff argues that "the City of Hammond is a public employer and a municipal subdivision, which, upon information and belief, receives federal funding through law enforcement and public safety

---

[5] In Plaintiff's response brief, she states, "Municipal police departments are frequently recipients of such federal funds, bringing them within the scope of Section 501 of the Rehabilitation Act." [DE 24 at 12]. However, Section 501 does not cover entities receiving federal funding, but instead covers entities within the federal government. *See* § 701. In contrast, Section 504 covers entities receiving federal funding. *See* § 704. No other arguments are made to support why a claim under Section 501 should not be dismissed.

grants[.]" [DE 24 at 12]. Plaintiff then provides links to websites showcasing federal grants previously received by the City of Hammond and Hammond Police Department, including the Department of Justice's COPS Hiring Program and the Justice Assistance Grant. [*Id.* at nn.1–3]. Plaintiff concludes that "[a]t this stage, [she] is not required to prove the existence of these specific grants; rather, she need only allege facts that make it plausible that Defendants receive federal funds[.]" [*Id.*]. In reply, Defendants argue that "Plaintiff['s] attempts to direct the [C]ourt to information outside of its Amended Complaint" is "an admission by Plaintiff that her Amended Complaint fails to include allegations that raise a right to relief above the speculative level[.]" [DE 25 at 4].

Two points must be addressed with regard to Defendants' argument. First, the Seventh Circuit has noted that "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency of a complaint so long as they are consistent [with] the allegations in the complaint.'" *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)); *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("In the district court, too, a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove."). Because of this, and because the additional allegations being raised in Plaintiff's response brief are consistent with the allegations raised in the Amended Complaint—that is, the facts being alleged are not entirely irrelevant or directed toward a brand-new legal theory—the Court cannot simply disregard these allegations as Defendants request. Second, while Plaintiff does not indicate which defendant she holds liable under Section 504, [*see* DE 14, ¶¶ 54–61], the allegations she raises in her response brief, which show Defendants City of Hammond and Hammond Police Department as possible recipients of federal funding, implies that Plaintiff intends to at least pursue

her Section 504 claim against these two defendants. Therefore, because the Court must draw all reasonable inferences in favor of the nonmoving party, *see Gutierrez*, 111 F.3d at 1369, and because Plaintiff has provided enough notice to Defendants City of Hammond and the Police Department that they could be held liable under Section 504 as recipients of federal funding, Defendants' argument is an insufficient ground for dismissal.

That being said, though, Plaintiff's Section 504 claim fails under *Twombly* in much the same way as her ADA claim. Under Count IV, Plaintiff states only that she was placed in an employment position that did not accommodate her mental disability and that Defendants knew of her disability but refused to accommodate it. [DE 14, ¶¶ 57–58]. These assertions, however, rise only to the level of legal conclusions. Without providing additional supporting facts, such as what activities or programs she was denied access to; what accommodations were available; how, when, and where Defendants denied Plaintiff these accommodations; what intent or motivation Defendants had in discriminating against Plaintiff; and how Plaintiff's disability played a role in the discrimination, this claim similarly fails to provide notice as to what Defendants are *actually* liable for.

Therefore, because Plaintiff has not sufficiently pled a claim under the Rehabilitation Act, Count IV is dismissed.

### E.  Counts V and VI: State Law Claims

Looking next to Counts V and VI, Plaintiff raises claims under Indiana state law for negligent infliction of emotional distress (Count V) and intentional infliction of emotional distress (Count VI). Defendants argue that Plaintiff failed to timely file a notice of tort claim as required by the Indiana Tort Claims Act (ITCA), and thus her noncompliance serves as a jurisdictional bar. [DE 23 at 7]. In response, Plaintiff asserts that she did plead compliance with the ITCA in the

Amended Complaint, [DE 14, ⁋ 15; DE 24 at 13], and that Defendants' argument is merely an affirmative defense which does not justify dismissal, especially where any defect was merely technical. [DE 24 at 13].

"The Indiana Tort Claims Act provides that a tort claim against a government entity is barred unless the claimant provides the entity with notice of the claim within 180 days of the loss." *Schoettmer v. Wright*, 992 N.E.2d 702, 706 (Ind. 2013) (citing Ind. Code § 34-13-3-8). As explained by the Indiana Supreme Court, notice provided to a political subdivision, such as the City of Hammond,

> "[M]ust describe in a short and plain statement the facts on which the claim is based," including "the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice."

*Id.* (quoting Ind. Code § 34-13-3-10). The purpose behind Indiana's tort claim notice requirement is "to ensure that government entities have the opportunity to investigate the incident giving rise to the claim and prepare a defense." *Id.* So long as the purpose of ITCA is being satisfied, its procedural notice requirement should not function as "a trap for the unwary." *Id.* (quoting *Galbreath v. City of Indianapolis*, 255 N.E.2d 225, 228 (Ind. 1970)).

Here, Plaintiff attached a tort claim notice to her brief opposing Defendants' Motion to Dismiss. [DE 24-3]. That tort claim notice, however, does *not* concern Plaintiff; instead, it is addressed to an entirely different set of dates and facts concerning Joseph Martinez—Plaintiff's husband. [*Id.*]. Thus, in contrast to Plaintiff's assertion, [*see* DE 24 at 13], this is more than just a mere technical defect. Moreover, in the Amended Complaint, Plaintiff alleges only the following with regard to ITCA compliance: "On July 17, 20223 [sic]. Plaintiff Carmen Ramirez Martinez issued a Tort Claim Notice to the City of Hammond Police Department and the City of Hammond Board of Council in compliance with Ind. Code §34-13-3, et seq." [DE 14, ⁋ 15]. No

further context is provided outlining the basis for Plaintiff's claims, and because Plaintiff has not attached a tort claim notice detailing her situation, it is even unclear whether Plaintiff filed a tort claim notice at all. This, coupled with the fact that Plaintiff does not appear to have provided Defendants with the requisite baseline information necessary for Defendants to properly assess her claims and prepare a defense, strongly suggests that ITCA's notice requirement has not been satisfied. *See Schoettmer*, 992 N.E.2d 702 (citing *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989)) (providing that the purpose behind ITCA's notice requirement is often satisfied when "the notice supplied by the claimant of [her] intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense").

Thus, because Plaintiff has not demonstrated compliance with ITCA's notice requirement, her state law claims are procedurally barred. Both Counts V and VI are therefore dismissed.

### F. Count VII: § 1983 Claim[6]

---

[6] The caption of Plaintiff's initial and amended complaints lists Defendant William Short as being sued in his individual capacity, while the "Parties" section of each complaint specifies that Defendant Short is being sued in his official capacity. [DE 1, ¶ 3; DE 14, ¶ 3]. Defendants raised this point in both their initial and renewed motions to dismiss, [*see* DE 9 at 1 n.1; DE 23 at 1 n.1], and sought to have Defendant Short dismissed from the suit on this basis. It still remains unclear as to which claims Plaintiff actually attributes liability to Defendant Short, as Defendant Short is only specifically named in Count III whereas Plaintiff broadly uses "Defendants" in Counts I and V–VII (thereby implying Defendant Short could be held liable under those claims). However, it does appear that by naming Defendant Short with some type of capacity, it was most likely intended that Defendant Short be sued under § 1983.

The Seventh Circuit recently explained that when a defendant is sued under § 1983 and it is unclear as to what capacity the defendant is being sued under, "courts must evaluate the complaint 'in its entirety' and look to the 'conduct alleged' to determine whether the plaintiff intends to sue the defendant in an official or individual capacity." *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025). Here, the conduct alleged appears to stem from Defendant Short's role as a final policymaker in the Hammond Police Department, thereby implying the intent to pursue an official-capacity claim. [DE 14, ¶¶ 11, 73]. That said, Plaintiff—like the complainant in *Orr*—appears to seek only money damages, [*Id.* at 8–9], a decision the Seventh Circuit described as "a telling choice" of the intent to pursue an individual-capacity claim. *See Orr*, 147 F.4th at 740. As is well-recognized, "the Eleventh Amendment bars damages claims against state officials sued in their official capacities, depriving federal courts of jurisdiction over such claims." *Id.* at 739 (citing *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532–33 (7th Cir. 2022)). As such, while plaintiffs may pursue monetary damages for individual-capacity claims, plaintiffs are limited to injunctive or declaratory remedies for official-capacity suits. *Id.* (citing *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 519 (7th Cir. 2024)). Because of this, to the extent that

Finally, the Court turns to Count VII in which Plaintiff brings a claim under § 1983 for an alleged violation of her First Amendment rights. However, this claim's pleading is insufficient on two grounds. First, it is unclear who Plaintiff intends to sue under this claim as Plaintiff only lists "Defendant" without also specifically identifying any of the named Defendants. [DE 14, ℙ 73]. Second, it is unclear as to what type of § 1983 claim Plaintiff intends to bring based on the facts alleged: municipal or individual.

Plaintiff alleges only the following in support of this claim: "By developing and implementing unlawful employment policies and practices designed to detour Plaintiff Martinez from further speaking and complaining about her working conditions to the public and in public forums, Defendant violated and continues to violate Plaintiff's First Amendment rights." [DE 14, ℙ 73]. Defendants focus their argument on assuming that Plaintiff's claim is one for municipal liability. [DE 23 at 9]. Plaintiff's argument in response appears to reaffirm this notion. [DE 24 at 17]. However, even in her response Plaintiff does not squarely identify which Defendant she is targeting or the type of claim she intends to pursue.

Ordinarily, policymaking would constitute one of the means by which a municipality could be liable. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)) (noting that the "policy" or "custom" language for municipal *Monell* claims has been interpreted as including the following "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority"). Yet, this does not completely address the situation as policymaking suits can also be

Plaintiff seeks to pursue a damages claim against Defendant Short in his official-capacity under § 1983, that claim is barred. *See id.*

raised against individual defendants in either their individual or official capacities. *See Orr*, 147 F.4th at 740 ("References to policymaking alone do not transform an individual-capacity suit into an official-capacity one; policymakers can still be held personally liable when they devise or implement a deliberately indifferent policy."). Thus, at the end of the day Plaintiff's pleading as to this claim leaves both Defendants and the Court without clear notice as to what claim Plaintiff actually seeks to bring. Therefore, Count VII is dismissed for insufficient pleading.

### G. Conclusion

Because Plaintiff has failed to sufficiently state a claim under Counts I through VII of her Amended Complaint, and because Plaintiff has not addressed the deficiencies previously raised by Defendants in their first motion to dismiss, [DE 8], the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Amended Complaint [DE 14].

### II.    Motion for Leave to File a Second Amended Complaint [DE 33]

Having addressed Defendants' Motion to Dismiss, the Court now turns to assess Plaintiff's Motion for Leave to File a Second Amended Complaint. [DE 33]. First, it should be noted that when Plaintiff filed her motion for leave to amend, the Court had yet to issue a decision on Defendants' Motion to Dismiss, thereby rendering Plaintiff's motion as procedurally improper. However, even looking past its untimeliness, Plaintiff's motion nonetheless fails on the merits.

Under Rule 15(a) of the Federal Rules of Civil Procedure, the Court may grant leave to amend pleadings, and such leave generally "shall be freely given when justice so requires." *See Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (citing Fed. R. Civ. P. 15(a)). However, "leave to amend is 'inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Id.* (quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)).

Here, this is the second time Plaintiff has sought to amend her complaint. [*See* DE 12]. Plaintiff, therefore, is essentially seeking to take the proverbial third bite from the apple. A review of Plaintiff's newly amended complaint [DE 34] though shows why this is problematic, as Plaintiff has been unable to cure *any* of the deficiencies either previously raised by Defendants or noted by the Court. *See generally supra* Section I. Because of this, it is futile to allow Plaintiff yet another chance to modify the complaint where the outcome will ultimately remain unchanged in all regards. Thus, Plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED.

## **CONCLUSION**

For all of these reasons, the Court **GRANTS** Defendants' Motion to Dismiss [DE 22] and **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint [DE 33]. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.

ENTERED:  October 17, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court

21